Richard Morin (SBN 285275)
Law Office of Rick Morin, PC
21163 Newport Coast Drive #206
Newport Coast, CA 92657
Phone: (949) 996-3094
Email: legal@rickmorin.net

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Steve Anthony Harrasser,<br><br>    Plaintiff,<br>v.<br><br>Hill Country Community Clinic; and Does 1-10, inclusive,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS** |

Plaintiff Steve Anthony Harrasser ("Plaintiff") alleges the following:

**INTRODUCTION**

Plaintiff brings this action against defendants Hill Country Community Clinic ("Hill Country"), and Does 1-10, inclusive (collectively "Defendants") for unlawfully and intentionally discriminating against Plaintiff because of Plaintiff's disability and denying Plaintiff full and equal access to the Hill Country Community Clinic located at 1401 Gold Street in Redding, California ("Gold Street Clinic").

**PARTIES**

1. Plaintiff is a natural person. Plaintiff is disabled within the meaning of the Americans with Disabilities Act and the Unruh Civil Rights Act.

2. Hill Country is a California corporation with its principal address in Round Mountain, California. At all times relevant to this complaint, Hill Country owned, managed, operated, and/or otherwise was responsible for the Gold Street Clinic.

3.  Plaintiff is currently unable to ascertain the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is legally responsible in some manner for the acts, omissions, and occurrences alleged herein. Plaintiff will seek leave of Court to amend this Complaint to show the true names and capacities of said Defendants when the same have been ascertained.

4.  Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each Defendant was the agent, servant, employee, partner, joint venturer, alter ego, and/or co-conspirator of each remaining Defendant and was acting within the course and scope of said agency, employment, partnership, joint venture, and/or conspiracy, and with the permission and consent of each remaining Defendant.

**JURISDICTION AND VENUE**

5.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., a law of the United States.

6.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

7.  Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and because Defendant conducts business in this judicial district.

**FACTUAL ALLEGATIONS**

8.  Plaintiff is a disabled individual who suffers from Post-Traumatic Stress Disorder (PTSD). Plaintiff was diagnosed with PTSD as a result of her service in the United States Marine Corps.

9.  Plaintiff is a person with one or more disabilities. Plaintiff suffers from, among other conditions, post-traumatic stress disorder (PTSD), severe depression, anxiety disorder, fibromyalgia, ataxia, neuropathy, lumbar disc displacement, and Ehlers-Danlos syndrome.

10. Plaintiff's disabilities substantially limit one or more major life activities, including but not limited to walking, standing, bending, lifting, concentrating, thinking, performing manual tasks, working, learning, sleeping, and the operation of major bodily functions including neurological, brain, and circulatory functions.

11. Plaintiff has been deemed disabled by the Social Security Administration and receives Social Security disability benefits.

12. Due to his disabilities, Plaintiff relies on the assistance of a trained service dog to perform tasks related to his disabilities and to mitigate the effects of his conditions.

13. At all times relevant to this Complaint, Plaintiff used a service dog named Buddy.

14. Buddy is individually trained to perform work or tasks directly related to Plaintiff's disabilities, including but not limited to detecting signs of anxiety and PTSD, providing deep pressure therapy, calming Plaintiff through physical contact during anxiety episodes, and grounding techniques.

15. Buddy is trained to provide assistance when Plaintiff experiences anxiety in medical and dental appointments, helping to prevent anxiety attacks and enabling Plaintiff to receive necessary medical care.

16. On or about July 22, 2025, Plaintiff had a scheduled medical appointment at the Gold Street Clinic.

17. The purpose of Plaintiff's appointment was to see a new primary care physician, Dr. Eric Gifford, for the first time. Plaintiff had been waiting months to see a primary care physician, as his previous doctors had quit or changed fields, leaving him without consistent medical care for an extended period.

18. This was Plaintiff's first appointment with Dr. Gifford, who was newly assigned as Plaintiff's primary care physician at the clinic.

19. Plaintiff arrived at the clinic with his service dog, Buddy, for his scheduled appointment.

20. Initially, Plaintiff was greeted by a medical assistant who had no objection to Buddy's presence and proceeded to take Plaintiff's blood pressure and intake information without incident.

21. The medical assistant completed the intake portion of the appointment while Buddy remained calm and well-behaved at Plaintiff's feet. Buddy lay quietly on the floor at Plaintiff's feet

during the intake process, providing comfort to Plaintiff as he began to experience anxiety related to the medical appointment.

22. When Dr. Gifford arrived and saw that Plaintiff had a service dog in the examination room, Dr. Gifford became hostile and refused to enter the room.

23. Dr. Gifford stated, in substance and in part: "I ain't coming in if there's a dog. No no, I don't give a damn. Not coming in there. Don't care, I'm not coming in there with a dog in there period."

24. Dr. Gifford's tone was nasty and hostile, causing Plaintiff significant anxiety and distress.

25. At no time did Buddy bark, growl, lunge, or behave aggressively toward Dr. Gifford or any other person.

26. At no time did Buddy pose any threat to Dr. Gifford or any other person at the clinic. In fact, Buddy remained calm, quiet, and under Plaintiff's control throughout the entire appointment.

27. Despite Buddy's calm and appropriate behavior, and despite the fact that the medical assistant had no concerns about the service dog's presence, Dr. Gifford absolutely refused to enter the examination room to provide medical care to Plaintiff.

28. As a direct result of Dr. Gifford's refusal to enter the room because of Buddy's presence, Plaintiff was denied medical evaluation and treatment.

29. After Dr. Gifford refused to see him, Plaintiff went to the lobby and requested to reschedule his appointment.

30. Clinic staff told Plaintiff they would contact him about rescheduling but did not provide him with a new appointment. Instead, clinic staff gave Plaintiff a card with a telephone number to file a complaint.

31. Plaintiff called the number and left a message complaining about the discriminatory treatment he had received.

32. As a result of Defendant's discriminatory denial of medical care, Plaintiff now faces a delay of three or more months before he can see another physician. During this extended delay, Plaintiff continues to suffer from his untreated medical conditions. Plaintiff would like to return to the Gold Street Clinic to resume his medical care once they cease their discriminatory conduct.

33. At all times relevant to this Complaint, Defendants operated a medical clinic providing medical services to members of the public in exchange for payment.

34. Defendant's clinic is a public accommodation and a business establishment.

### FIRST CAUSE OF ACTION

Violations of the Unruh Civil Rights Act

California Civil Code §§ 51 et seq.

35. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

36. Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

37. At all times relevant to this Complaint, Plaintiff was an individual with a disability as defined by 42 U.S.C. § 12102.

38. At all times relevant to this Complaint, Buddy was a service animal as defined by 28 C.F.R. § 36.104, individually trained to perform work and tasks directly related to Plaintiff's disabilities.

39. At all times relevant to this Complaint, Defendant was a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F), specifically a professional office of a health care provider.

40. The ADA regulations at 28 C.F.R. § 36.302(c)(1) provide that a public accommodation shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability.

41. On July 22, 2025, Defendants intentionally discriminated against Plaintiff on the basis of his disability by denying him full and equal access to medical services because Plaintiff was accompanied by his service animal.

42. Defendants had no legitimate reason to deny Plaintiff medical services based on the

presence of Buddy.

43. Defendants' policy or practice of refusing to provide medical care to individuals accompanied by service animals screens out individuals with disabilities from fully and equally enjoying Defendant's medical services.

44. Defendants' conduct was intentional and willful.

45. Defendants' violations of the ADA are ongoing and continuing, causing Plaintiff irreparable injury for which there is no adequate remedy at law.

46. Pursuant to 42 U.S.C. § 12188, Plaintiff is entitled to injunctive relief, including an order requiring Defendants to modify their policies, practices, and procedures to permit the use of service animals by individuals with disabilities; train all employees, including physicians and medical staff, regarding their obligations under the ADA to accommodate individuals with disabilities who use service animals, implement written policies prohibiting discrimination against individuals with disabilities who use service animals; and take any other actions necessary to ensure compliance with Title III of the ADA.

47. Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

Violations of the Unruh Civil Rights Act

California Civil Code §§ 51 et seq.

48. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

49. California Civil Code section 51 provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their... disability... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

50. California Civil Code section 51 provides in relevant part: "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990... shall also constitute a violation of this section."

51. The Gold Street Clinic owned, operated, managed, controlled, and/or sponsored by Defendants constitute a business establishment and a place open to the general public within the meaning of the Unruh Civil Rights Act.

52. At all relevant times, Plaintiff was an individual with a disability within the meaning of California Civil Code section 51.

53. At all relevant times, Plaintiff's service dog was a service animal within the meaning of California Civil Code section 54.1.

54. Defendants' denial of Plaintiff's access to medical treatment at the Gold Street Clinic violated Plaintiff's rights under California Civil Code sections 51.

55. Defendants' conduct also constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act and therefore also violates California Civil Code section 51, subdivision (f).

56. Defendants' actions were intentional, willful, and done in conscious disregard of Plaintiff's rights.

57. As a direct and proximate result of Defendants' violation of the Unruh Civil Rights Act, Plaintiff has suffered and continues to suffer damages, including but not limited to humiliation, embarrassment, emotional distress, mental anguish, and interference with the provision of medical services to which he is entitled.

58. Pursuant to California Civil Code section 52, subdivision (a), Plaintiff is entitled to statutory damages in the amount of not less than four thousand dollars ($4,000) for each violation of his rights under the Unruh Civil Rights Act.

59. Pursuant to California Civil Code section 52, subdivision (a), Plaintiff is entitled to recover his attorney's fees and costs incurred in bringing this action.

## **PRAYER**

Plaintiff hereby prays for the following:

1. An injunction requiring Defendants to modify their policies, practices, and procedures to permit the use of service animals by individuals with disabilities; train all employees, including physicians and medical staff, regarding their obligations under the ADA to accommodate individuals with disabilities who use service animals; implement written policies prohibiting discrimination against

individuals with disabilities who use service animals; and take any other actions necessary to ensure compliance with Title III of the ADA;

  2.  Damages of no less $100,000;

  3.  Attorney's fees pursuant to 42 U.S.C. § 12205, California Civil Code § 52, and/or other statute(s), expenses, and costs of suit;

  4.  Other relief that the court deems appropriate.

Dated: October 6, 2025        Law Office of Rick Morin, PC

                            /s/ Rick Morin
                            _____
                            Richard Morin
                            Attorney for Plaintiff